# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| NINA HARRIS and MARK HARRIS, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action: 1:22-cv-5361 |
| | § | |
| | § | With Jury Demand Endorsed |
| EQUIFAX INFORMATION SERVICES LLC, | § | |
| EXPERIAN INFORMATION SOLUTIONS, | § | |
| Inc., TRANS UNION LLC, PHH MORTGAGE | § | |
| CORPORATION, successor by merger to | § | |
| OCWEN LOAN SERVICING, LLC, BANK | § | |
| OF AMERICA NA, SELECT PORTFOLIO | § | |
| SERVICING, Inc., COMMUNITY | § | |
| LOAN SERVICING LLC, and NEWREZ LLC | § | |
| dba SHELLPOINT MORTGAGE | § | |
| SERVICING | § | |
| | § | |
| Defendants. | § | |

---

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiffs, Nina Harris and Mark Harris ("Plaintiffs"), by and through counsel, for their Complaint against Defendants, Equifax Information Services LLC, Experian Information Solutions, Inc., Trans Union LLC, PHH Mortgage Corporation, successor by merger to Ocwen Loan Servicing, LLC, Bank of America  NA, Select Portfolio Servicing, Inc., Community Loan Servicing LLC, and NewRez LLC dba Shellpoint Mortgage Servicing  jointly, severally, and in solido, states as follows:

## I.  INTRODUCTION

1.      Three of the Defendants are consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and Defendants, PHH Mortgage Corporation, successor by merger to Ocwen Loan Servicing, LLC, Bank of America  NA, Community Loan Servicing LLC, Select Portfolio Servicing, Inc., and NewRez LLC dba Shellpoint Mortgage Servicing are each furnishers of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Plaintiffs seek to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II.  PARTIES

2.      Plaintiffs, Mark Harris and Nina Harris, are natural persons residing in Alameda County, California, and are "consumers," as defined by the FCRA, 15 U.S.C. § 1681a(c)**,** and are victims of repeated  false credit reporting.

**Made Defendants herein are**:

3.      Upon information and belief, Defendant Equifax Information Services LLC, which may also hereinafter be referred to as "Equifax," "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is a Georgia limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its headquarters, 1550 Peachtree Street, Northwest, Atlanta, Georgia 30309.  Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties.

Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4.     Upon information and belief, Defendant Experian Information Solutions, Inc., which may also hereinafter be referred to as "Experian", "Defendant," "Defendants," "CRA," or "CRA Defendant," or "CRA Defendants," is an Ohio corporation that does business in this judicial district and may be served by delivering a summons to its headquarters, 475 Anton Blvd., Costa Mesa, California 92626. Experian is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

5.     Upon information and belief, Defendant Trans Union LLC, which may also hereinafter be referred to as "Trans Union", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is an Illinois limited liability company that does business in this judicial district and may be served by delivering a summons to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

6.     Upon information and belief, Defendant PHH Mortgage Corporation, successor by merger to Ocwen Loan Servicing, LLC which may also hereinafter be referred to as "Ocwen,"

"PHH," "Ocwen/PHH" "Ocwen d/b/a PHH," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a New Jersey Corporation, that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 1 Mortgage Way, Mount Laurel, New Jersey 08054 . PHH is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

7.      Upon information and belief, Defendant Bank of America NA, which may also hereinafter be referred to as "Bank of America," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a North Carolina corporation that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 100 North Tryon Street, Charlotte, NC 28255. Bank of America is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

8.      Upon information and belief, Defendant Select Portfolio Servicing, Inc., which may also hereinafter be referred to as "SPS," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Utah corporation that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 3217 Decker Lake Drive, West Valley City, Utah 84119-3284. SPS is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

9.      Upon information and belief, Community Loan Servicing LLC, which may also

hereinafter be referred to as "CLS," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Florida limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 4425 Ponce de Leon Blvd., 5th Floor, Coral Gables, Florida 33146. Community Loan Servicing is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

10.    Upon information and belief, Defendant NewRez LLC dba Shellpoint Mortgage Servicing which may also hereinafter be referred to as "Shellpoint," "NewRez," "Shellpoint/NewRez" "NewRez d/b/a Shellpoint," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a South Carolina company, that does substantial business in this judicial district  and may be served by delivering a summons to its Legal Department at its headquarters, 75 Beattie Pl. #300, Greenville, SC 29601 . Shellpoint is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

11.    As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically

include, but are not limited to, Equifax, Experian, and TransUnion.

### III.  JURISDICTION AND VENUE

12.    Plaintiffs respectfully assert that this Honorable Court has jurisdiction in this case arises under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiffs also assert actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiffs respectfully request that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

13.    Venue is proper in this District, because CRA Defendants and Furnisher Defendants transact business in this District concerning disputes similar to Plaintiffs made by consumers that reside in New Jersey. PHH's and NewRez's headquarters are located in this judicial district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiffs' claims against Defendants occurred in the District of New Jersey as further described. 28 U.S.C. § 1391.

14. Venue is further proper in this District, because debtors and consumers residing in New Jersey customarily send disputes similar to the Plaintiffs' disputes to the CRA Defendants who send to the Furnisher Defendants as part of their reinvestigations. Specifically, CRA Defendants entered into agreements with PHH and NewRez in this judicial district to receive credit reporting data concerning Plaintiffs. Any and all requests to investigate Plaintiffs' dispute(s) sent from the CRA Defendants to as part of their reinvestigation concerning Plaintiffs' disputes were submitted to PHH's and NewRez's headquarters and investigated by PHH and NewRez using resources located at or closely connected to this judicial district. PHH and NewRez managed Plaintiffs' mortgages from this

judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

## IV.  FACTUAL ALLEGATIONS

### Background Information for Plaintiffs' Ocwen Mortgage

15.     Upon information and belief, in or around December 2006 Plaintiffs secured a first mortgage loan for their single family home in Oakland, CA.

16.     Sometime thereafter, Ocwen Loan Servicing, LLC acquired Plaintiffs' mortgage loan and assigned loan number 713139xxxx, hereinafter ("Ocwen mortgage").

17.     On September 29, 2015, Plaintiffs filed for a Chapter 13 bankruptcy and listed Ocwen as a creditor holding a secured claim. Redacted copies of Plaintiffs' Docket Report and Voluntary Petition are each attached hereto as Exhibits "A" and "B".

18.     On April 11, 2016, Plaintiffs Chapter 13 payment plan was confirmed. A redacted copy of Plaintiffs' Chapter 13 Payment Plan is attached hereto as Exhibit "C".

19.     Upon information and belief, on or about February 2019, Ocwen was sold, including all rights, liabilities, mortgage loan servicing responsibilities, and furnishing responsibilities, to PHH.

20.     Plaintiff's Ocwen Mortgage was included with the above referenced sale, and thus, was transferred to PHH and assigned a loan number of 954801295xxxx (hereinafter "PHH Mortgage").

21.     On December 29, 2020, Plaintiffs were discharged from Chapter 13 Bankruptcy and

excepted from discharge Plaintiffs' Ocwen mortgage and PHH mortgage. A redacted copy of Plaintiffs' Chapter 13 Discharge Order is attached hereto as Exhibit "D".

22.     Read in concert, Sections 1322(a)(2), 1322(b)(5), and 1328(a)(1) of the Bankruptcy Code, bar discharging home mortgage debts in a Chapter 13 Bankruptcy.

23.     On January 4, 2021, Martha J. Bronitsky, Trustee for Plaintiffs' Chapter 13 Bankruptcy, filed a Chapter 13 Standing Trustee's Final Report and Account. A redacted copy of the Chapter 13 Standing Trustee's Final Report and Account is attached hereto as Exhibit "E".

24.     On or around February 9, 2021, Plaintiffs' Chapter 13 Bankruptcy was terminated. *See* Exhibit "A".

25.     Throughout Plaintiffs' Chapter 13 Bankruptcy, under direct or indirect order from the bankruptcy Trustee, timely monthly mortgage payments were made to the Ocwen mortgage and PHH mortgage.

26.     To this day, Plaintiffs continue to make timely mortgage payments to the now PHH Mortgage.


Background Information for Plaintiffs' Bank of America, SPS, CLS, and NewRez Mortgages

27.     Upon information and belief, in or around August 2005 Plaintiffs secured a first mortgage loan for their duplex in Berkeley, CA.

28.     Sometime thereafter, Bank of America acquired Plaintiffs' first mortgage loan and assigned loan number 10503xxxx hereinafter ("Bank of America mortgage").

29.     On September 29, 2015, Plaintiffs filed for a Chapter 13 bankruptcy and listed Bank of America as a creditor holding a secured claim. *See* Exhibits "A" and "B".

30.     On April 11, 2016, Plaintiffs Chapter 13 payment plan was confirmed. *See* Exhibit "C".

31.     Upon information and belief, sometime after filing for bankruptcy, Plaintiffs' Bank of America mortgage account was transferred three times as follows: Bank of America transferred the Bank of America mortgage to SPS and SPS assigned loan number 277001407xxxx ("SPS mortgage"). SPS then transferred the SPS mortgage to CLS and CLS assigned loan number 628000193xxxx ("CLS mortgage"). CLS then transferred the CLS mortgage to NewRez and NewRez assigned loan number 57947xxxx ("NewRez mortgage").

32.     On November 24, 2020, Plaintiffs were discharged from Chapter 13 Bankruptcy having excepted from discharge Plaintiffs' Bank of America mortgage, SPS mortgage, CLS mortgage, and New Rez mortgage. *See* Exhibit "D".

33.     Read in concert, Sections 1322(a)(2), 1322(b)(5), and 1328(a)(1) of the Bankruptcy Code, bar discharging home mortgage debts in a Chapter 13 Bankruptcy.

34.     On January 4, 2021, Martha J. Bronitsky, Trustee for Plaintiffs' Chapter 13 Bankruptcy, filed a Chapter 13 Standing Trustee's Final Report and Account. *See* Exhibit "E".

35.     On or around February 9, 2021, Plaintiffs' Chapter 13 Bankruptcy was terminated. *See* Exhibit "A".

36.     Throughout Plaintiffs' Chapter 13 Bankruptcy, under direct or indirect order from the bankruptcy Trustee, timely monthly mortgage payments were made to the Bank of America mortgage, SPS mortgage, CLS mortgage, and NewRez mortgage.

37.     NewRez is listed in the Trustee's Final Report and Account. *See* Exhibit "E".

38.     To this day, Plaintiffs make regular and timely payments to the now NewRez

mortgage.

<u>Credit Reporting for Plaintiffs' Ocwen Mortgage</u>

39.     Sometime in February 2022, Plaintiffs pulled their credit reports and noticed that inaccurate information was reporting.

40.     A redacted copy of Plaintiffs' February 2022 Tri-Merge Credit Report, which includes Plaintiffs' Equifax, Experian, and Trans Union credit reports/consumer files, are attached hereto as Exhibit "F".

41.     Within the Tri-Merge credit report, Plaintiffs noticed that Equifax reported the following inaccuracies for Plaintiffs' Ocwen mortgage: Equifax failed to update the reporting of the Ocwen mortgage after Plaintiffs' Chapter 13 Bankruptcy was discharged; reported an account status "derogatory"; and reported within the creditor remarks section references to Plaintiffs' Chapter 13 Bankruptcy, despite the Plaintiffs  having been discharged from Chapter 13 Bankruptcy.

42.     This reporting is incorrect because Plaintiffs completed the required payments through Plaintiffs' Chapter 13 Bankruptcy, was successfully discharged, and excepted the Ocwen mortgage debts from being discharged; therefore, any remarks and/or references to a Chapter 13 Bankruptcy should have been removed from the Ocwen mortgage tradelines after the Chapter 13 Bankruptcy was discharged.[1]

43.     Metro 2 guidelines require furnishers and/or credit reporting agencies to update the

---

[1] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any bankruptcy references or suppression codes associated with bankruptcy reporting so that ongoing payments made by the consumer can be reported.

reporting of an account when the borrower associated to the account filed Chapter 13 Bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Once a consumer is discharged, Metro 2 reporting standards specifically require the removal of any referencing to a Chapter 13 Bankruptcy and suppression codes associated with bankruptcy reporting by submitting a CII code of "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's Chapter 13 Bankruptcy, and then continued reporting once a consumer is discharged.

44.     Metro 2 guidelines have been adopted by Equifax as the industry standards, and these industry standards are followed by Equifax.

45.     Within the Tri-Merge credit report, Plaintiffs noticed that Trans Union reported the following inaccuracies for Plaintiffs' Ocwen mortgage: Trans Union failed to update the reporting of the Ocwen mortgage after Plaintiffs' Chapter 13 Bankruptcy was discharged; reported an account status "derogatory"; and reported within the creditor remarks section references to Plaintiffs' Chapter 13 Bankruptcy, despite the Plaintiffs  having been discharged from Chapter 13 Bankruptcy.

46.     This reporting is incorrect because Plaintiffs completed the required payments through Plaintiffs' Chapter 13 Bankruptcy, was successfully discharged, and excepted the Ocwen mortgage debts from being discharged; therefore, any remarks and/or references to a Chapter 13 Bankruptcy should have been removed from the Ocwen mortgage tradelines after the Chapter 13 Bankruptcy was discharged.[2]

---

[2] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any bankruptcy references or suppression codes associated

47.     Metro 2 guidelines require furnishers and/or credit reporting agencies to update the reporting of an account when the borrower associated to the account filed Chapter 13 Bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Once a consumer is discharged, Metro 2 reporting standards specifically require the removal of any referencing to a Chapter 13 Bankruptcy and suppression codes associated with bankruptcy reporting by submitting a CII code of "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's Chapter 13 Bankruptcy, and then continued reporting once a consumer is discharged.

48.     Metro 2 guidelines have been adopted by Trans Union as the industry standards, and these industry standards are followed by Trans Union.

<u>Credit Reporting for Plaintiffs'  Bank of America Mortgage</u>

49.     Within the Tri-Merge credit report, Plaintiffs noticed that Equifax reported the following inaccuracies for Plaintiffs' Bank of America mortgage: Equifax failed to update the reporting of the Bank of America mortgage after Plaintiffs' Chapter 13 Bankruptcy was discharged; reported an account status "derogatory"; and reported within the creditor remarks section references to Plaintiffs' Chapter 13 Bankruptcy, despite the Plaintiffs  having been discharged from Chapter 13 Bankruptcy.

50.     This reporting is incorrect because Plaintiffs completed the required payments through Plaintiffs' Chapter 13 Bankruptcy, was successfully discharged, and excepted the Bank of

with bankruptcy reporting so that ongoing payments made by the consumer can be reported.

America mortgage debts from being discharged; therefore, any remarks and/or references to a Chapter 13 Bankruptcy should have been removed from the Bank of America mortgage tradelines after the Chapter 13 Bankruptcy was discharged.[3]

51.     Metro 2 guidelines require furnishers and/or credit reporting agencies to update the reporting of an account when the borrower associated to the account filed Chapter 13 Bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Once a consumer is discharged, Metro 2 reporting standards specifically require the removal of any referencing to a Chapter 13 Bankruptcy and suppression codes associated with bankruptcy reporting by submitting a CII code of "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's Chapter 13 Bankruptcy, and then continued reporting once a consumer is discharged.

52.     Metro 2 guidelines have been adopted by Equifax as the industry standards, and these industry standards are followed by Equifax.

53.     Within the Tri-Merge credit report, Plaintiffs noticed that Experian reported the following inaccuracies for Plaintiffs' Bank of America mortgage: Experian failed to update the reporting of the Bank of America mortgage after Plaintiffs' Chapter 13 Bankruptcy was discharged; reported an account status "derogatory"; and reported within the creditor remarks section references to Plaintiffs' Chapter 13 Bankruptcy, despite the Plaintiffs  having been discharged from Chapter

---

[3] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any bankruptcy references or suppression codes associated with bankruptcy reporting so that ongoing payments made by the consumer can be reported.

13 Bankruptcy.

54.     This reporting is incorrect because Plaintiffs completed the required payments through Plaintiffs' Chapter 13 Bankruptcy, was successfully discharged, and excepted the Bank of America mortgage debts from being discharged; therefore, any remarks and/or references to a Chapter 13 Bankruptcy should have been removed from the Bank of America mortgage tradelines after the Chapter 13 Bankruptcy was discharged.4

55.     Metro 2 guidelines require furnishers and/or credit reporting agencies to update the reporting of an account when the borrower associated to the account filed Chapter 13 Bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Once a consumer is discharged, Metro 2 reporting standards specifically require the removal of any referencing to a Chapter 13 Bankruptcy and suppression codes associated with bankruptcy reporting by submitting a CII code of "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's Chapter 13 Bankruptcy, and then continued reporting once a consumer is discharged.

56.     Metro 2 guidelines have been adopted by Experian as the industry standards, and these industry standards are followed by Experian.

57.     Within the Tri-Merge credit report, Plaintiffs noticed that Trans Union reported the following inaccuracies for Plaintiffs' Bank of America mortgage: Trans Union failed to update the

_____

4 The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any bankruptcy references or suppression codes associated with bankruptcy reporting so that ongoing payments made by the consumer can be reported.

reporting of the Bank of America mortgage after Plaintiffs' Chapter 13 Bankruptcy was discharged; reported an account status "derogatory"; and reported within the creditor remarks section references to Plaintiffs' Chapter 13 Bankruptcy, despite the Plaintiffs  having been discharged from Chapter 13 Bankruptcy.

58.     This reporting is incorrect because Plaintiffs completed the required payments through Plaintiffs' Chapter 13 Bankruptcy, was successfully discharged, and excepted the Bank of America mortgage debts from being discharged; therefore, any remarks and/or references to a Chapter 13 Bankruptcy should have been removed from the Bank of America mortgage tradelines after the Chapter 13 Bankruptcy was discharged.[5]

59.     Metro 2 guidelines require furnishers and/or credit reporting agencies to update the reporting of an account when the borrower associated to the account filed Chapter 13 Bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Once a consumer is discharged, Metro 2 reporting standards specifically require the removal of any referencing to a Chapter 13 Bankruptcy and suppression codes associated with bankruptcy reporting by submitting a CII code of "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's Chapter 13 Bankruptcy, and then continued reporting once a consumer is discharged.

60.     Metro 2 guidelines have been adopted by Trans Union as the industry standards, and

_____

[5] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any bankruptcy references or suppression codes associated with bankruptcy reporting so that ongoing payments made by the consumer can be reported.

these industry standards are followed by Trans Union.

<u>Credit Reporting for Plaintiffs' SPS Mortgage</u>

61.     Within the Tri-Merge credit report, Plaintiffs noticed that Experian reported the following inaccuracies for Plaintiffs' SPS mortgage: Experian failed to update the reporting of the SPS mortgage after Plaintiffs' Chapter 13 Bankruptcy was discharged; reported an account status "derogatory"; and reported within the creditor remarks section references to Plaintiffs' Chapter 13 Bankruptcy, despite the Plaintiffs having been discharged from Chapter 13 Bankruptcy.

62.     This reporting is incorrect because Plaintiffs completed the required payments through Plaintiffs' Chapter 13 Bankruptcy, was successfully discharged, and excepted the SPS mortgage debts from being discharged; therefore, any remarks and/or references to a Chapter 13 Bankruptcy should have been removed from the SPS mortgage tradelines after the Chapter 13 Bankruptcy was discharged.6

63.     Metro 2 guidelines require furnishers and/or credit reporting agencies to update the reporting of an account when the borrower associated to the account filed Chapter 13 Bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Once a consumer is discharged, Metro 2 reporting standards specifically require the removal of any referencing to a Chapter 13 Bankruptcy and suppression codes associated with bankruptcy reporting by submitting a CII code of "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it

---

6 The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any bankruptcy references or suppression codes associated with bankruptcy reporting so that ongoing payments made by the consumer can be reported.

prevents the reporting of any late payment history during the pendency of a consumer's Chapter 13 Bankruptcy, and then continued reporting once a consumer is discharged.

64.     Metro 2 guidelines have been adopted by Experian as the industry standards, and these industry standards are followed by Experian.

65.     Within the Tri-Merge credit report, Plaintiffs noticed that Trans Union reported the following inaccuracies for Plaintiffs' SPS mortgage: Trans Union failed to update the reporting of the SPS mortgage after Plaintiffs' Chapter 13 Bankruptcy was discharged; reported an account status "derogatory"; and reported within the creditor remarks section references to Plaintiffs' Chapter 13 Bankruptcy, despite the Plaintiffs having been discharged from Chapter 13 Bankruptcy.

66.     This reporting is incorrect because Plaintiffs completed the required payments through Plaintiffs' Chapter 13 Bankruptcy, was successfully discharged, and excepted the SPS mortgage debts from being discharged; therefore, any remarks and/or references to a Chapter 13 Bankruptcy should have been removed from the SPS mortgage tradelines after the Chapter 13 Bankruptcy was discharged.[7]

67.     Metro 2 guidelines require furnishers and/or credit reporting agencies to update the reporting of an account when the borrower associated to the account filed Chapter 13 Bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Once a consumer is discharged, Metro 2 reporting standards specifically require the removal of any referencing to a Chapter 13 Bankruptcy

---

[7] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any bankruptcy references or suppression codes associated with bankruptcy reporting so that ongoing payments made by the consumer can be reported.

and suppression codes associated with bankruptcy reporting by submitting a CII code of "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's Chapter 13 Bankruptcy, and then continued reporting once a consumer is discharged.

68.     Metro 2 guidelines have been adopted by Trans Union as the industry standards, and these industry standards are followed by Trans Union.

Credit Reporting for Plaintiffs' CLS Mortgage

69.     Within the Tri-Merge credit report, Plaintiffs noticed that Equifax reported the following inaccuracies for Plaintiffs' CLS mortgage: Equifax failed to update the reporting of the CLS mortgage after Plaintiffs' Chapter 13 Bankruptcy was discharged; reported an account status "derogatory"; and reported within the creditor remarks section references to Plaintiffs' Chapter 13 Bankruptcy, despite the Plaintiffs  having been discharged from Chapter 13 Bankruptcy.

70.     This reporting is incorrect because Plaintiffs completed the required payments through Plaintiffs' Chapter 13 Bankruptcy, was successfully discharged, and excepted the CLS mortgage debts from being discharged; therefore, any remarks and/or references to a Chapter 13 Bankruptcy should have been removed from the CLS mortgage tradelines after the Chapter 13 Bankruptcy was discharged.[8]

71.     Metro 2 guidelines require furnishers and/or credit reporting agencies to update the reporting of an account when the borrower associated to the account filed Chapter 13 Bankruptcy

---

[8] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any bankruptcy references or suppression codes associated with bankruptcy reporting so that ongoing payments made by the consumer can be reported.

by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Once a consumer is discharged, Metro 2 reporting standards specifically require the removal of any referencing to a Chapter 13 Bankruptcy and suppression codes associated with bankruptcy reporting by submitting a CII code of "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's Chapter 13 Bankruptcy, and then continued reporting once a consumer is discharged.

72.     Metro 2 guidelines have been adopted by Equifax as the industry standards, and these industry standards are followed by Equifax.

73.     Within the Tri-Merge credit report, Plaintiffs noticed that Experian reported the following inaccuracies for Plaintiffs' CLS mortgage: Experian failed to update the reporting of the CLS mortgage after Plaintiffs' Chapter 13 Bankruptcy was discharged; reported an account status "derogatory"; and reported within the creditor remarks section references to Plaintiffs' Chapter 13 Bankruptcy, despite the Plaintiffs having been discharged from Chapter 13 Bankruptcy.

74.     This reporting is incorrect because Plaintiffs completed the required payments through Plaintiffs' Chapter 13 Bankruptcy, was successfully discharged, and excepted the CLS mortgage debts from being discharged; therefore, any remarks and/or references to a Chapter 13 Bankruptcy should have been removed from the CLS mortgage tradelines after the Chapter 13 Bankruptcy was discharged.[9]

---

[9] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any bankruptcy references or suppression codes associated with bankruptcy reporting so that ongoing payments made by the consumer can be reported.

75.     Metro 2 guidelines require furnishers and/or credit reporting agencies to update the reporting of an account when the borrower associated to the account filed Chapter 13 Bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Once a consumer is discharged, Metro 2 reporting standards specifically require the removal of any referencing to a Chapter 13 Bankruptcy and suppression codes associated with bankruptcy reporting by submitting a CII code of "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's Chapter 13 Bankruptcy, and then continued reporting once a consumer is discharged.

76.     Metro 2 guidelines have been adopted by Experian as the industry standards, and these industry standards are followed by Experian.

77.     Within the Tri-Merge credit report, Plaintiffs noticed that Trans Union reported the following inaccuracies for Plaintiffs' CLS mortgage: Trans Union failed to update the reporting of the CLS mortgage after Plaintiffs' Chapter 13 Bankruptcy was discharged; reported an account status "derogatory"; and reported within the creditor remarks section references to Plaintiffs' Chapter 13 Bankruptcy, despite the Plaintiffs  having been discharged from Chapter 13 Bankruptcy.

78.     This reporting is incorrect because Plaintiffs completed the required payments through Plaintiffs' Chapter 13 Bankruptcy, was successfully discharged, and excepted the CLS mortgage debts from being discharged; therefore, any remarks and/or references to a Chapter 13 Bankruptcy should have been removed from the CLS mortgage tradelines after the Chapter 13

Bankruptcy was discharged.[10]

79.    Metro 2 guidelines require furnishers and/or credit reporting agencies to update the reporting of an account when the borrower associated to the account filed Chapter 13 Bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Once a consumer is discharged, Metro 2 reporting standards specifically require the removal of any referencing to a Chapter 13 Bankruptcy and suppression codes associated with bankruptcy reporting by submitting a CII code of "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's Chapter 13 Bankruptcy, and then continued reporting once a consumer is discharged.

80.    Metro 2 guidelines have been adopted by Trans Union as the industry standards, and these industry standards are followed by Trans Union.

<u>Credit Reporting for Plaintiffs' NewRez Mortgage</u>

81.    Within the Tri-Merge credit report, Plaintiffs noticed that Trans Union reported the following inaccuracies for Plaintiffs' NewRez mortgage: Trans Union failed to update the reporting of the NewRez mortgage after Plaintiffs' Chapter 13 Bankruptcy was discharged; reported an account status "derogatory"; and reported within the creditor remarks section references to Plaintiffs' Chapter 13 Bankruptcy, despite the Plaintiffs having been discharged from Chapter 13 Bankruptcy.

---

[10] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any bankruptcy references or suppression codes associated with bankruptcy reporting so that ongoing payments made by the consumer can be reported.

82.     This reporting is incorrect because Plaintiffs completed the required payments through Plaintiffs' Chapter 13 Bankruptcy, was successfully discharged, and excepted the NewRez mortgage debts from being discharged; therefore, any remarks and/or references to a Chapter 13 Bankruptcy should have been removed from the NewRez mortgage tradelines after the Chapter 13 Bankruptcy was discharged.[11]

83.     Metro 2 guidelines require furnishers and/or credit reporting agencies to update the reporting of an account when the borrower associated to the account filed Chapter 13 Bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Once a consumer is discharged, Metro 2 reporting standards specifically require the removal of any referencing to a Chapter 13 Bankruptcy and suppression codes associated with bankruptcy reporting by submitting a CII code of "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's Chapter 13 Bankruptcy, and then continued reporting once a consumer is discharged.

84.     Metro 2 guidelines have been adopted by Trans Union as the industry standards, and these industry standards are followed by Trans Union.

_____

[11] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any bankruptcy references or suppression codes associated with bankruptcy reporting so that ongoing payments made by the consumer can be reported.

Credit Reporting Dispute Letters and Reinvestigation Requests

85.    On or about March 2022, the Plaintiffs disputed the reporting of above referenced mortgage accounts with Equifax, Experian, and Trans Union ("CRA Defendants") directly.

86.    Plaintiffs specifically disputed the reporting of the Ocwen mortgage account, the Bank of America mortgage account, and the CLS mortgage account with Defendant Equifax directly.

87.    Plaintiffs requested that under the FCRA, Defendant Equifax conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiff's credit report concerning the Ocwen mortgage account, the Bank of America mortgage account, and the CLS mortgage account.

88.    Redacted copies of Plaintiffs' dispute letters sent to Equifax, are each attached hereto as Exhibit "G".

89.    Equifax responded to Plaintiffs' disputes on May 3, 2022 and failed to address and correct all the disputed issues for both Plaintiffs. Redacted copies of Equifax's responses to Plaintiffs are attached hereto as Exhibit "H".

90.    Plaintiffs then each obtained an updated copy of their three-bureau credit report on June 22, 2022. Redacted copies of Plaintiffs' June 22, 2022 Three-bureau credit reports are attached hereto as Exhibit "I".

91.    Based on Plaintiffs' June 22, 2022 Tri-Merge credit reports, it was confirmed and became apparent that Equifax received the dispute letters and failed to make all the substantive changes Plaintiffs requested in the direct disputes to Equifax. *See* Exhibits "F", "G", "H" and "I".

92.    Equifax failed to accurately update the reporting for the Ocwen mortgage, the Bank

of America mortgage, and the CLS mortgage. *See* Exhibits "F", "G", "H" and "I".

93.     Equifax continued to report for the Ocwen mortgage, the Bank of America mortgage, and the CLS mortgage with remarks concerning the chapter 13 bankruptcy; that they were still involved or discharged in Plaintiffs' Chapter 13 Bankruptcy, which means these accounts were never updated after Plaintiffs' Chapter 13 Bankruptcy was discharged. *See* Exhibits "F", "G", "H" and "I".

94.     Equifax's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiffs' disputes and failed to remedy the inaccuracies within the Ocwen mortgage, the Bank of America mortgage, and the CLS mortgage accounts, and gave no explanation as to why these accounts were reporting inaccurately.

95.     Plaintiffs' inaccurate Equifax consumer reports were disseminated to third parties before and/or after the instant disputes.

96.     Equifax chose to "verify" false information from unreliable sources, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiffs' Ocwen mortgage account, Bank of America mortgage account, and CLS mortgage account.

97.     Upon the Plaintiffs' request to Equifax for verification and correction regarding the Ocwen mortgage account, the Bank of America mortgage account, and the CLS mortgage account, and in accordance with Equifax's standard procedures, Equifax did not evaluate or consider any of Plaintiffs' information, claims or evidence, and did not make any attempt to substantially or reasonably verify the reporting of the Ocwen mortgage account, the Bank of America mortgage account, and the CLS mortgage account.

98.     Equifax has adopted the Metro 2 reporting standards, Equifax deviated from the

standards based on its conduct in this case, and by Equifax deviating from the adopted standards, Equifax injured Plaintiffs' credit standing and/or worthiness.

99.     In the alternative, Equifax failed to contact one or more of the Furnisher Defendants, therefore, failed to perform any investigation at all.

100.    In the alternative to the allegation that Equifax failed to contact one or more of the Furnisher Defendants, it is alleged that Equifax did forward some notice of the disputes to the Furnisher Defendants, and one or more of the Furnisher Defendants failed to conduct a lawful investigation.

101.    Plaintiff Nina Harris specifically disputed the reporting of the Bank of America mortgage account, the SPS mortgage account, the CLS mortgage account and the NewRez mortgage account with Defendant Experian directly.

102.    Plaintiff Nina Harris requested that under the FCRA, Defendant Experian conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiff's credit report concerning the Bank of America mortgage account, the SPS mortgage account, the CLS mortgage account and the NewRez mortgage account.

103.    A redacted copy of Plaintiff Nina Harris's dispute letter to Experian, is attached hereto as Exhibit "J".

104.    Experian received Plaintiff's dispute on April 13, 2022. A redacted copy of the Certified Mail Receipt and Proof of Delivery for Nina Harris's Experian dispute is attached hereto as Exhibit "K".

105.    Upon information and belief, Experian did not respond to Plaintiff Nina Harris's dispute.

106.    Plaintiffs then obtained an updated copy of their three-bureau credit reports on June 22, 2022. *See* Exhibit "I".

107.    Based on Plaintiffs' June 22, 2022 Tri-Merge credit reports, it was apparent that for both Nina and Mark Harris all of the tradelines in dispute were now missing, presumably deleted rather than maintained and modified. *See* Exhibits "F", "J", and "I".

108.    Experian failed to accurately update the reporting for the Bank of America mortgage, the SPS mortgage, the CLS mortgage and the NewRez mortgage. *See* Exhibits "F", "J", and "I".

109.    Experian inappropriately deleted the Bank of America mortgage account, the SPS mortgage account, the CLS mortgage account and the NewRez mortgage account. *See* Exhibits "F", "J", and "I".

110.    Experian's response, or lack thereof, was not the result of a reasonable investigation into Plaintiff's dispute and failed to remedy the inaccuracies within the Bank of America mortgage account, the SPS mortgage account, the CLS mortgage account and the NewRez mortgage account, and gave no explanation as to why these accounts were deleted.

111.    Plaintiffs' inaccurate Experian consumer reports were disseminated to third parties before and/or after the instant dispute.

112.    Experian chose to "verify" false information from unreliable sources, failed to correct the inaccurate information, and inappropriately deleted Plaintiffs' Bank of America mortgage account, the SPS mortgage account, the CLS mortgage account and the NewRez mortgage account.

113.    Upon the Plaintiff's request to Experian for verification and correction regarding the Bank of America mortgage account, the SPS mortgage account, the CLS mortgage account and the

NewRez mortgage account, and in accordance with Experian's standard procedures, Experian did not evaluate or consider any of Plaintiffs' information, claims or evidence, and did not make any attempt to substantially or reasonably verify the reporting of the Bank of America mortgage account, the SPS mortgage account, the CLS mortgage account and the NewRez mortgage account.

114.    Experian has adopted the Metro 2 reporting standards, Experian deviated from the standards based on its conduct in this case, and by Experian deviating from the adopted standards, Experian injured Plaintiffs' credit standing and/or worthiness.

115.    In the alternative, Experian failed to contact one or more of the Furnisher Defendants, therefore, failed to perform any investigation at all.

116.    In the alternative to the allegation that Experian failed to contact one or more of the Furnisher Defendants, it is alleged that Experian did forward some notice of the dispute to the Furnisher Defendants, and one or more of the Furnisher Defendants failed to conduct a lawful investigation.

117.    Plaintiffs specifically disputed the reporting of the Ocwen mortgage account, the Bank of America mortgage account, the SPS mortgage account, the CLS mortgage account and the NewRez mortgage account with Defendant Trans Union directly.

118.    Plaintiffs requested that under the FCRA, Defendant Trans Union conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiffs' credit reports concerning the Ocwen mortgage account, the Bank of America mortgage account, the SPS mortgage account, the CLS mortgage account and the NewRez mortgage account.

119.    Redacted copies of Plaintiffs dispute letters to Trans Union, are attached hereto as Exhibit "L".

120.     Trans Union responded to both Plaintiffs on April 23, 2022. Trans Union did remove the bankruptcy remarks from the SPS mortgage and fixed this dispute but failed to make the rest of the substantive changes to the disputed accounts and actually chose wrongly to delete the other tradelines instead. Redacted copies of Trans Union's responses to Plaintiffs' disputes are attached hereto as Exhibit "M".

121.     Plaintiffs then obtained an updated copy of their three-bureau credit reports on June 22, 2022. *See* Exhibit "I".

122.     Based on Plaintiffs' June 22, 2022 Tri-Merge credit reports, it was apparent that Trans Union received the Plaintiffs' dispute letters and rather than make simple modifications and work with the furnisher they instead chose to delete all the tradelines except for the SPS tradeline. *See* Exhibits "F", "L", "M", and I".

123.     Trans Union failed to accurately update the reporting for the Ocwen mortgage, the Bank of America mortgage, the CLS mortgage and the NewRez mortgage. *See* Exhibits "F", "L", "M", and I".

124.     Rather than appropriately modify the tradelines, Trans Union just deleted them. *See* Exhibits "F", "L", "M", and I".

125.     Trans Union's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiffs' disputes and failed to remedy the inaccuracies within the Ocwen mortgage account, the Bank of America mortgage account, the CLS mortgage account and the NewRez mortgage account, and gave no explanation as to why these accounts were reporting inaccurately and why they were all deleted after the disputes.

126.     Plaintiffs' inaccurate and incomplete Trans Union consumer reports were

disseminated to third parties before and/or after the instant disputes.

127.    Trans Union chose to "verify" false information from unreliable sources, failed to correct the inaccurate information, and inappropriately deleted Plaintiffs' Ocwen mortgage account, Bank of America mortgage account, CLS mortgage account and NewRez mortgage account.

128.    Upon the Plaintiffs' requests to Trans Union for verification and correction regarding the Ocwen mortgage account, the Bank of America mortgage account, the CLS mortgage account and the NewRez mortgage account, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiff's information, claims or evidence, and did not make any attempt to substantially or reasonably verify the reporting of the Ocwen mortgage account, the Bank of America mortgage account, the CLS mortgage account and the NewRez mortgage account.

129.    Trans Union has adopted the Metro 2 reporting standards, Trans Union deviated from the standards based on its conduct in this case, and by Trans Union deviating from the adopted standards, Trans Union injured Plaintiffs' credit standing and/or worthiness.

130.    In the alternative, Trans Union failed to contact one or more of the Furnisher Defendants, therefore, failed to perform any investigation at all.

131.    In the alternative to the allegation that Trans Union failed to contact one or more of the Furnisher Defendants, it is alleged that Trans Union did forward some notice of the dispute to the Furnisher Defendants, and one or more of the Furnisher Defendants failed to conduct a lawful investigation.

## V.  GROUNDS FOR RELIEF

### COUNT I – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

182.   The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

183.   Equifax violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiffs.

184.   The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

185.   Plaintiffs furnished Equifax the necessary documentation supporting Plaintiffs' tradelines, yet Equifax continued to prepare a patently false consumer report concerning Plaintiffs.

186.   Despite actual and implied knowledge that Plaintiffs' credit reports were and are not accurate, Equifax readily provided false reports to one or more third parties, thereby misrepresenting Plaintiffs, and ultimately Plaintiffs' creditworthiness.

187.   After Equifax knew or should have known Plaintiffs' account statuses in relation to their bankruptcy was inaccurate, they failed to make the corrections.

188.   As a result of Equifax's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

189.   Equifax's conduct, action, and inaction, were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In

the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

190.    The Plaintiffs are entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT II – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

191.    The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

192.    Equifax violated § 1681i by failing to update inaccurate information in the Plaintiffs' credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiffs' credit files, and relying upon verification from a source it has reason to know is unreliable.

193.    As a result of Equifax's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

194.    Equifax's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

195.    The Plaintiffs are entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT III – EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

196.    The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

197.    Experian violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiffs.

198.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

199.    Plaintiffs furnished Experian the necessary documentation supporting Plaintiffs' tradelines, yet Experian continued to prepare a patently false consumer report concerning Plaintiffs.

200.    Despite actual and implied knowledge that Plaintiffs' credit reports were and are not accurate, Experian readily provided false reports to one or more third parties, thereby misrepresenting Plaintiffs, and ultimately Plaintiffs' creditworthiness.

201.    After Experian knew or should have known Plaintiffs' account statuses in relation to their bankruptcy were inaccurate, they failed to make the corrections. Further, Plaintiffs did not request that the disputed items be deleted.

202.    As a result of Experian's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

203.    Experian's conduct, action, and inaction, were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

204.    The Plaintiffs are entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT IV – EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

205.    The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

206.    Experian violated § 1681i by failing to update inaccurate information in the Plaintiffs' credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiffs' credit files, and relying upon verification from a source it has reason to know is unreliable.

207.    As a result of Experian's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

208.    Experian's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling

the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

209.    The Plaintiffs are entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT V – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

210.    The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

211.    Trans Union violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiffs.

212.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

213.    Plaintiffs furnished Trans Union the necessary documentation supporting Plaintiffs' tradelines, yet Trans Union continued to prepare a patently false consumer report concerning Plaintiffs.

214.    Despite actual and implied knowledge that Plaintiffs' credit reports were and are not accurate, Trans Union readily provided false reports to one or more third parties, thereby misrepresenting Plaintiffs, and ultimately Plaintiffs' creditworthiness.

215.    After Trans Union knew or should have known Plaintiffs' account statuses in relation to their bankruptcy were inaccurate, they failed to make the corrections. Further, Plaintiffs did not request for the tradelines to be deleted.

216.    As a result of Trans Union's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

217.    Trans Union's conduct, action, and inaction, were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

218.    The Plaintiffs are entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT VI – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

219.    The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

220.    Trans Union violated § 1681i by failing to update inaccurate information in the Plaintiffs' credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiffs' credit files, and relying upon verification from a source it has reason to know is unreliable.

221.    As a result of Trans Union's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

222.    Trans Union's conduct, action, and inaction, were willful, rendering it liable for

actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

223.    The Plaintiffs are entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT VII – PHH'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681s-2(b))

224.    The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

225.    Defendant PHH violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiffs' dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

226.    PHH further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Ocwen/PHH representations within Plaintiffs' credit files with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiffs' dispute(s) of the Ocwen/PHH representations, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Ocwen/PHH representations to the consumer reporting agencies.

227.    As a result of PHH's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to

purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

228.    PHH's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

### COUNT VIII – BANK OF AMERICA'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681s-2(b))

229.    The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

230.    Defendant Bank of America violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiffs' dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

231.    Bank of America further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Bank of America representations within Plaintiffs' credit files with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiffs' dispute(s) of the Bank of America representations, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Bank of America representations to the consumer reporting agencies.

232.    As a result of Bank of America's conduct, action, and inaction, the Plaintiffs suffered

damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

233.    Bank of America's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

**COUNT IX – SPS'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681s-2(b))**

234.    The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

235.    Defendant SPS violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiffs' dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

236.    SPS further violated 15 U.S.C. § 1681s-2(b) by continuing to report the SPS representations within Plaintiffs' credit files with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiffs' dispute(s) of the SPS representations, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the SPS representations to the consumer reporting agencies.

237.    As a result of SPS's conduct, action, and inaction, the Plaintiffs suffered damages,

including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

238.    SPS's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

### COUNT X – CLS'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681s-2(b))

239.    The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

240.    Defendant CLS violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiffs' dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

241.    CLS further violated 15 U.S.C. § 1681s-2(b) by continuing to report the CLS representations within Plaintiffs' credit files with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiffs' dispute(s) of the CLS representations, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the CLS representations to the consumer reporting agencies.

242.    As a result of CLS's conduct, action, and inaction, the Plaintiffs suffered damages,

including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

243.    CLS's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

**COUNT XI – NEWREZ'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681s-2(b))**

244.    The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

245.    Defendant NewRez violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiffs' dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

246.    NewRez further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Shellpoint/NewRez representations within Plaintiffs' credit files with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiffs' dispute(s) of the Shellpoint/NewRez representations, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Shellpoint/NewRez representations to the consumer reporting agencies.

247.    As a result of NewRez's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

248.    NewRez's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

## VI.  VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

249.    Plaintiffs will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondeat superior and/or vicarious liability.

## VII. DAMAGES

250.    Plaintiffs respectfully requests that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including New Jersey.

251.    Plaintiffs respectfully request that this Honorable Court award Plaintiffs their

litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA and/or other laws.

252.    The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiffs.

253.    Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reportings about the Plaintiffs and have been a substantial factor in causing credit denials and other damages.

254.    Plaintiffs suffered a variety of damages, including economic and non-economic damages as prayed for herein.

255.    Defendants have negligently and/or willfully violated various provisions of the FCRA and are thereby liable unto Plaintiffs.

256.    Defendants are liable unto Plaintiffs for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiffs, Mark Harris and Nina Harris, pray that this Honorable Court:

A.    Enter Judgment in favor of Plaintiffs and against Defendants, Equifax Information

Services LLC**,** Experian Information Solutions, Inc., Trans Union LLC, PHH Mortgage Corporation, successor by merger to Ocwen Loan Servicing, LLC, Bank of America  NA, Select Portfolio Servicing, Inc., Community Loan Servicing LLC, and NewRez LLC dba Shellpoint Mortgage Servicing, jointly, severally, and in solido, for all reasonable damages sustained by Plaintiffs, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, applicable state law, and common law;

     B.    Find that the appropriate circumstances exist for an award of punitive damages to Plaintiffs;

     C.    Award Plaintiffs pre-judgment and post-judgment interest, as allowed by law;

     D.    Order that the CRA Defendants, Equifax Information Services LLC**,** Experian Information Solutions, Inc., and Trans Union LLC, and Furnisher Defendants, PHH Mortgage Corporation, successor by merger to Ocwen Loan Servicing, LLC, Bank of America  NA, Select Portfolio Servicing, Inc., Community Loan Servicing LLC, and NewRez LLC dba Shellpoint Mortgage Servicing, work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning Plaintiffs and/or any of Plaintiffs' personal identifiers.

     E.    Grant such other and further relief, in law or equity, to which Plaintiffs might show they are justly entitled.

Date Filed: September 1, 2022

Respectfully submitted,

*s/ Matthew P. Forsberg*
Matthew P. Forsberg
NJ State Bar Number  360702021
Gloria C. Lam
NJ State Bar Number 286962018
FCRA-NJ@fieldslaw.com
**FIELDS LAW FIRM**
9999 Wayzata Blvd.
Minnetonka, Minnesota 55305
(612) 383-1868 (telephone)
(612) 370-4256 (fax)


COUNSEL FOR PLAINTIFFS

**JURY DEMAND**

Plaintiffs hereby demands a trial by jury on all issues so triable.

September 1, 2022                    */s/ Matthew P. Forsberg*
Date                                 Matthew P. Forsberg